BEFORE THE FIRST DIVISION, APRIL 18, 1962

No. 66694.—F. W. Myers & Co., Inc. v. United States, protest 60/2342 (Ogdensburg).

■

OLIVER, Chief Judge: The merchandise involved in this case consists of certain so-called Sepascopes, which were classified as optical instruments and assessed with duty as such at the rate of 45 per centum ad valorem under paragraph 228(b) of the Tariff Act of 1930. Plaintiff claims that the articles are properly dutiable either at the rate of 13¾ per centum ad valorem under the provision in paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, for—

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for.

or at the rate of 19 per centum ad valorem under paragraph 397, as modified by T.D. 54108, as articles composed wholly or in chief value of metal, not specially provided for. The claim for free entry under paragraph 1604 of the Tariff Act of 1930 as agricultural implements, has been abandoned.

The sole witness was the president of Whitman Laboratories, the importer of the present merchandise, whose business includes "the sale and distribution of dairy machinery and devices for testing equipment which might be used by the dairy industry." After stating that he received academic degrees from Cornell University and the University of Minnesota in the field of dairy chemistry and dairy technology, the witness testified that he is familiar with Sepascopes, that he has used them, and that he has been "instrumental in suggesting some changes which I think have led to improvement from time to time." The witness' testimony supports the following summary.

The Sepascope in question is used by creameries or milk plants, which have "the problem of separating milk into two components, cream and skim milk, wherein they use a mechanical device known as a separator to accomplish it." The function of the Sepascope was described by the witness as follows (R. 10):

The Sepascope is of value to the creamery operator because he is enabled in a matter of seconds to ascertain whether the separator is separating efficiently or not. In other words, the operator is concerned with knowing immediately, or progressively as the operation continues, with whether or not the separator is effectively taking the fat from the skim milk portion and putting it into the cream. He does not want to lose fat into the skim milk portion. * * *

There was received in evidence a pictorial illustration of the Sepascope under consideration, which is described in the one-page leaflet (plaintiff's illustrative exhibit 1) as a "NEW VISUAL DEVICE FOR CHECKING SEPARATOR EFFICIENCY."

This Sepascope consists of a metal tube. At one end, there is an eyepiece; the other end has an electric bulb (25-watt size), which "receives its electrical supply from an ordinary house lead and connection." (R. 12.) Inside the tube, at about the center, is a piece of glass with an etched surface and cross-

lines painted thereon, described as a "ground glass image screen engraved with a double set of cross lines" (illustrative exhibit 1, *supra*). Directly in front of the eyepiece is a so-called glass cell or chamber, composed of two flat plain pieces of glass, or glass faces, that are so constructed as to hold a very thin layer of milk on the left half and a thicker layer of milk on the right half.

To use the Sepascope in question, the operator of the separator pours a sample of skim milk into the glass cell or chamber, and, by means of the eyepiece, he observes the degree of light passing through the layer of milk to the glass image screen, from which he can determine the approximate fat content, thereby enabling him to decide whether the separator is in satisfactory working order. In the model of the Sepascope under consideration, the operator would see an illuminated circle, split in halves, and, by simply looking over the right half, he could determine whether the separator is operating satisfactorily. Explaining why the electric-light bulb is essential for the operation of the Sepascope in question, the witness testified as follows:

It supplies light which expedites the examination of the milk. I pointed out earlier that this could be accomplished by the devices spreading some milk on a plain surface, plain glass surface and examining it by looking at it through the window glass, but that the light in this case, coupled with the particular quantity or thickness quantity here of milk employed in the machine, facilitates its examination.

It was agreed between counsel for the respective parties that "the imported merchandise is in chief value of steel, not plated with platinum, gold, or silver, and is not colored with gold lacquer." (R. 19.)

In *United States* v. *Bliss & Co. et al.*, 6 Ct. Cust. Appls. 433, T.D. 35980, our appellate court, in discussing the provision for optical instruments, stated as follows:

The word "optics" is well enough in substance defined as the science which treats of light and vision, the organs of sight, chromatics, and all that is connected with the phenomena of sight. See Standard and Century dictionaries. "Optical" of course is an adjective which is derived from the same root as "optics," and means relating to the science of optics.

\*   \*   \*   \*   \*   \*   \*

The fact that light is the foundation of vision is doubtless the reason why the science of optics is said to relate not only to the organs of vision but to light itself and doubtless accounts for what we think is the fact, that in the common understanding of the term "optical" relates to the phenomena of both light and vision. They are inseparable, because light itself is "the sensation of which one becomes conscious through the optic nerve."

In *United States* v. *International Forwarding Co.*, 9 Ct. Cust. Appls. 156, T.D. 37995, the appellate court, citing with approval the *Bliss* case, *supra*, held that an instrument is or is not an optical instrument, depending on whether or not it is designed directly or indirectly as an aid to vision, or to produce for optical inspection the picture of some object.

Essential features of the Sepascope in question are the eyepiece, the light source (electric-light bulb), and the "ground glass image screen." The combined functions thereof enable the article under consideration to serve its purpose. Through light rays focused on the glass image screen, the operator of a cream separator, using the eyepiece to view a layer of skim milk, gets a "picture" of the skim milk and makes his determination. Stated differently, this Sepascope performs its function through a combination of light and vision. That it aids vision, is shown in plaintiff's uncontradicted testimony to the effect that the operator of a cream separator can learn more expeditiously, and with a higher degree of accuracy and more efficiently, by using a Sepascope, than can be determined by the naked eye, whether his machine is working satisfactorily. It,

therefore, follows that the Sepascope involved herein is an optical instrument, within the judicial interpretation thereof as enunciated in the cited authorities, and we so hold.

The conclusion makes plaintiff's claims untenable. The provision for optical instruments in paragraph 228(a), invoked herein by the collector, is more specific than the general descriptive language of paragraph 353, as modified, *supra*, under which plaintiff seeks classification of the present merchandise. Since the Sepascope in question is provided for as an optical instrument, the residuary provision in paragraph 397, as modified, for metal articles, not specially provided for, which plaintiff also includes in its protest claims, cannot be applied.

We have considered all of the cases and authoritative references cited in the briefs of counsel for the respective parties, but have referred herein only to the cases deemed necessary to support the conclusion reached.

The protest is overruled and judgment will be rendered accordingly.