**EAC ENGINEERING, DIVISION OF the EAST ASIATIC COMPANY, INC., Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Court No. 82–1–00096.**

United States Court of International Trade.

Oct. 24, 1985.

Metzger, Shadyac & Schwarz, Carl Schwarz, Annandale, Va., and Wesley K. Caine, McLean, Va., for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Jerry P. Wiskin, New York City, for defendant.

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from the Federal Republic of Germany, and described on the customs invoices as "spark detection systems."

The parties are before the court on cross-motions for summary judgment. The merchandise was classified by the Customs Service as "optical instruments" under item 712.05 of the Tariff Schedules of the United States (TSUS). Consequently, the

merchandise was assessed with duty of 25 per centum ad valorem.

Plaintiff protests this classification and contends that the merchandise is properly classifiable under item 712.15, TSUS, as "Instruments and apparatus for measuring or detecting alpha, beta, X-ray, gamma, cosmic or similar radiations, and parts thereof," with a duty rate of 6.7 per centum ad valorem in 1980 and 7 per centum ad valorem in 1979. Alternatively, plaintiff contends that the merchandise is classifiable under either item 712.49, TSUS, a "basket" provision for electrical measuring and checking instruments, or under items 688.-40 or 688.45, TSUS, depending upon the year of importation, as electrical articles not specially provided for.

The pertinent statutory provisions of the tariff schedules are as follows:

Classified Under:
Schedule 7, Part 2:
Part 2 headnotes:

. . . .

3. The term "optical instruments", as used in this part, embraces only instruments which incorporate one or more optical elements, but does not include any instrument in which the incorporated optical element or elements are solely for viewing a scale or for some other subsidiary purpose.

————————

. . . .

Electrical measuring, checking, analyzing, or automatically controlling instruments and apparatus, and parts thereof:
712.05   optical instruments or apparatus, and parts thereof . . . 25% ad val. [1979].
      [23.1% ad val. in 1980].

Claimed Under:
Schedule 7, Part 2, Subpart D:
Electrical measuring, checking, analyzing, or automatically controlling instruments and apparatus, and parts thereof:

. . . .
  Other:

. . . .

712.15   Instruments and apparatus for measuring or detecting alpha, beta, gamma, X-ray, cosmic or similar radiations, and parts thereof . . . . . . . . . . 7% ad val. [1979].
      [6.7% ad val. in 1980].

Alternative classifications claimed by plaintiff:
Schedule 7, Part 2, Subpart D:
712.49   Other . . . . . . . . . . 10% ad val. [1979].
      [9.4% ad val. in 1980].
Schedule 6, Part 5:
Electrical articles, and electrical parts of articles, not specially provided for:

. . . .

688.45   Other . . . . . . . . . . 4.9% ad val. [1980].

The Court may grant a motion for summary judgment under Rule 56 of the Rules of this Court only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See B & E Sales Co. v. United States*, 9 CIT ——, Slip Op. 85–22, at 5 (Feb. 28, 1985); *C.J. Tower & Sons of Buffalo, Inc. v. United States*, 68 Cust.Ct. 17, 22, C.D. 4327, 336 F.Supp. 1395, 1399 (1972), *aff'd*, 61 CCPA 90, C.A.D. 1129, 499 F.2d 1277 (1974).

■ The question presented, therefore, is whether, within the meaning of the competing tariff provisions, the imported merchandise is dutiable as "optical instruments or apparatus" as classified by Customs, or, as "instruments and apparatus for measuring or detecting alpha, beta, gamma, X-ray, cosmic or similar radiations," as claimed by plaintiff. In order to decide this question, the court "must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878, *reh'g denied*, 739 F.2d 628 (Fed.Cir.1984).

After a careful examination of the merchandise, relevant case law, the pleadings, and supporting papers, it is the determination of the Court that the plaintiff has satisfied its burden of establishing that the government's classification was wrong. *See* 28 U.S.C. § 2639 (1982); *Jarvis Clark Co., supra*, 733 F.2d at 878. It is the determination of the Court, however, that plaintiff has not established the correct classification. The record before the Court shows that material issues of fact exist as to which of the plaintiff's proposed alterna-

tives is correct. Hence, the Court exercises its discretionary power of remand, and orders that the action be remanded so that Customs may determine the proper classification of the imported merchandise. *See* 28 U.S.C. § 2643(b) (1982); *Jarvis Clark, supra,* 733 F.2d at 878.

The imported merchandise is used in plaintiff's Flamex Spark Detection and Extinguishing System (Flamex System). This industrial safety system is designed to prevent fires in industrial plants equipped with pneumatic dust-removing and material-transport systems in which combustible material, such as dust produced by woodworking or textile plants, is air-conveyed through ducts or pipes.

The Flamex System is comprised of a spark detection device, a control console, and an extinguishing mechanism. The spark detection device contains a photoelectric cell which is sensitive to sudden surges of infrared radiation emitted by passing sparks. When a spark passes the detector, the device emits an electrical impulse which is transmitted to the control console of the Flamex System. The console sounds an audible alarm and activates the extinguishing mechanism. The spark is doused by the extinguishing mechanism, which sprays a nebulized cloud of water into the duct or pipe being monitored for sparks.

Two kinds of detectors are used in the Flamex System: the glass-disk-type spark detector and the fibre-optic-type spark detector. Both types of detectors are claimed by plaintiff to be erroneously classified. The glass-disk-type spark detector is designed to be installed directly into the duct or pipe to be monitored for sparks, and is used in normal temperature situations. The fibre-optic-type spark detector, constructed with dual fibre-optic probes, is used in high temperature situations, and allows the photoelectric cell of the detector to be situated at a distance from a hot duct or pipe.

The glass-disk-type spark detector has three basic components or groupings of parts. The first component is a flat, darkly colored disk of glass, approximately 3 millimeters thick and 15 millimeters in diameter, which is encircled by a metal ring. The glass disk shields the photoelectric cell from extraneous visible light, but does not block infrared radiation. The glass disk is inserted into the duct or pipe being monitored for sparks, and allows infrared radiation to reach the photoelectric cell while filtering out extraneous light and protecting the cell and interior of the detector from dust accumulation.

The second component consists of a photoelectric cell and associated electrical circuitry. The photoelectric cell, a silicon semiconductor, emits an electrical impulse when exposed to a sudden surge of infrared radiation. The associated electrical circuitry amplifies the electrical impulse and transmits it to the control console of the Flamex System. The final component is the metal housing that encases the detector.

The fibre-optic-type detector also has three basic components. The fibre-optic-type does not have a glass disk assembly, but, instead, has an assembly of dual-fibre optic probes. One end of the fibre optic is installed directly into the duct or pipe being monitored for sparks, and the other end is inserted into the metal housing of the detector. The fibre optic probes transmit electromagnetic radiation emitted by passing sparks from the duct to the photoelectric cell inside the detector. The fibre-optic-type detectors are used in high temperature situations because the photoelectric cell and associated circuitry are sensitive to heat, and must be located at a distance from the hot duct or pipe.

In attacking the Customs Service's classification of the spark detectors, it is plaintiff's principal contention that, because the imported detectors do not aid or enhance human vision or create images or pictures for inspection, they are not "optical instruments" within the contemplation of the tariff schedules. Plaintiff also contends that any "optical elements" contained in the imported spark detectors are used for a subsidiary purpose. The government admits that the articles do not "aid or enhance

human vision or create for inspection any type of picture or image," but argues that this function is not a necessary element of an "optical instrument."

To determine whether the imported articles are properly classifiable as "optical instruments," as provided in item 712.05, TSUS, it is "necessary to ascertain the common meaning of the tariff term and compare it with the merchandise in issue." *E. Green & Son, Inc. v. United States*, 59 CCPA 31, 34, C.A.D. 1032, 450 F.2d 1396, 1398 (1971). It is well established that tariff schedules are written in the language of commerce, and the terms are to be construed in accordance with their common or commercial meanings. *See Nippon Kogaku (USA), Inc. v. United States*, 69 CCPA 89, 92, 673 F.2d 380, 382 (1982). Likewise, it is clear that the "common meaning of a tariff term is not a question of fact, but a question of law." *Schott Optical Glass, Inc. v. United States*, 67 CCPA 32, 34, C.A.D. 1239, 612 F.2d 1283, 1285 (1979).

The headnotes to Part 2 of Schedule 7, TSUS, state that:

> The term "optical instruments", ... embraces only instruments which incorporate one or more optical elements, but does not include any instrument in which the incorporated optical element or elements are solely for viewing a scale or for some subsidiary purpose.

Schedule 7, Part 2, headnote 3, TSUS. The *Tariff Classification Study* explains that "Headnote 3 includes a definition of the term 'optical instruments.' ... It is believed that this definition substantially conforms with existing customs practice." *Tariff Classification Study*, Schedule 7, at 140 (1960).

In *Engis Equipment Co. v. United States*, 62 Cust.Ct. 29, C.D. 3670, 294 F.Supp. 964 (1969), the United States Customs Court "summarized" existing Customs practice and detailed the characteristics necessary "to qualify a device as an optical measuring instrument for tariff purposes." In *Engis* the imported merchandise consisted of autocollimators, used to determine the flatness of a surface. The

imported articles were classified as optical measuring instruments. Plaintiff protested, arguing that the autocollimators were properly classifiable as scientific or laboratory instruments. The court held that the imported articles possessed all the required characteristics of optical measuring instruments. The United States Customs Court discussed the characteristics of an optical instrument for Customs duty purposes:

> First, the device must function in such a manner that employment of its optical features is dominant or primary, as compared to the role of its other components. Second, the device's optical elements must be essential to its operation; that is, to be considered an optical measuring instrument, the device cannot be operated in its intended manner without the optical components. Third, optical instruments must, in performing their intended function of measurement, act upon, deal with, or route rays of light.... Finally, the optical system of *the instrument must aid human vision or create for inspection a picture or image of some object.*

62 Cust.Ct. at 32, 294 F.Supp. at 966–67 (citations omitted) (emphasis added). The *Engis* court relied, in part, on the legislative history to the Tariff Act of 1930, which stated: "Optical instruments are primarily used to aid or supplement human vision; they also include apparatus which depends for its operation on the passage of light through prismatic or lenticular optical glass." *Id.*, 294 F.Supp. at 967 (quoting *Summary of Tariff Information* 552 (1929)).

Although the statutory definition governs the classification of an article as an "optical instrument" under the tariff schedules, courts have recognized that the *Engis* criteria "provide an appropriate compendium of 'optical instrument' characteristics." *E.g., United States v. Ataka America, Inc.*, 64 CCPA 60, 65 n. 4, C.A.D. 1184, 550 F.2d 33, 36 n. 4 (1977); *Norman G. Jensen, Inc. v. United States*, 77 Cust.Ct. 9, 14 n. 4, C.D. 4668, 408 F.Supp. 1379 (1976).

The tariff meaning of the term optical instruments has been most recently discussed in *United States v. Ataka America, Inc.,* 64 CCPA 60, C.A.D. 1184, 550 F.2d 33 (1977). In *Ataka America,* the imported merchandise consisted of gastrointestinal fiberscopes "designed to be inserted through the mouth and throat of [an individual] for the purpose of [visually] examining the esophagus, stomach, and gastrointestinal areas of the body." In addition, the fiberscopes possessed "biopsy, cytology, suction, and photographic capabilities." The imported fiberscopes were classified as "other" optical instruments. Plaintiff claimed that the fiberscopes should be classified as "other" electromedical apparatus. The United States Court of Customs and Patent Appeals held that the fiberscopes fit the statutory definition of optical instruments contained in headnote 3 to schedule 7, part 2, of the TSUS, and concluded that:

> the term "optical instrument(s)" encompasses devices which act upon or interact with light, which permit or enhance human vision through the use of one or more optical elements, and, in light of headnote 3, which utilize the optical properties of the device in something beyond a "subsidiary" capacity.

*Id.* at 66, 550 F.2d at 37 (footnote omitted); *see also Corning Glass Works v. United States,* 82 Cust.Ct. 249, 254–55, C.D. 4807 (1979).

Judicial authority teaches that the statute requires that the "optical element" of an optical instrument must aid or enhance human vision. *E.g., United States v. Ataka America, Inc., supra,* 64 CCPA at 66, 550 F.2d at 37; *see also United States v. Bliss,* 6 Ct.Cust.Appls. 433, 440, T.D. 35980 (1915). In this case, the imported spark detectors are designed to respond to infrared radiation; they do not "enhance human vision through the use of one or more optical elements." Furthermore, any optical element of the instrument is subsidiary to its primary function of detecting sparks. Thus, it is the determination of the Court that the imported spark detectors

are not "optical instruments" within the tariff meaning of the term.

The government does not cite any case in which merchandise classified as optical instruments did not aid or enhance human vision. Instead, in support of its contentions, the government advances a theory which utilizes, by way of analogy, judicial discussion of the tariff items governing "optical glass." In essence, the government, citing *Schott Optical Glass, Inc. v. United States,* 82 Cust.Ct. 11, C.D. 4783, 468 F.Supp. 1318, *aff'd,* 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979), argues that the optical glass decisions have "broadened the understanding of what constitutes optical property and an optical effect." This argument is unpersuasive. The decisions which pertain to the customs definition of optical instruments are numerous and clear. In view of the authority which deals with optical instruments, the Court finds *Schott Optical* inapplicable.

Even if it were to be assumed that the glass filter and fibreprobe constitute optical elements, it is nevertheless clear that they are subsidiary elements of the spark detectors. The pertinent judicial decisions, consistent with the statutory definition, also teach that optical features may be subsidiary elements of an imported article. Schedule 7, Part 2, headnote 3, TSUS; *e.g. United States v. Ataka America, Inc.,* 64 CCPA 60, 66, 550 F.2d 33, 37 (1977); *Engis Equipment Co. v. United States,* 62 Cust.Ct. 29, 33 n. 5, 294 F.Supp. 964, 968 n. 5 (1969) (citing cases).

In *Hensel, Brockman & Lorbacher v. United States,* 20 Cust.Ct. 327, Abs. 52364 (1948), an imported instrument was designed to measure the amount of ozone in the atmosphere by detecting the intensity of ultraviolet light that reached a photoelectric cell in the instrument. The imported instrument was classified as "a spectrometer or as an optical measuring or testing instrument." *Id.* Plaintiff claimed that the article should have been classified as a "scientific instrument." The United States Customs Court held that the instruments were not optical measuring or testing in-

struments because they were "in no way an aid to vision," and because the optical system of the imported merchandise was "a subordinate part of the equipment." *Id.* at 328–29. The *Hensel* court stated that "A necessary prerequisite to classifying [an article] as an 'optical instrument' is that it 'aids vision.'" *Id.* The court recognized that, although an instrument "may have an optical system in the form of lenses, prisms, and mirrors, and [use] principles established in the science of optics," it is not necessarily an optical instrument. In *Hensel,* the instrument utilized a lens and shutter to focus the ultraviolet light on the photoelectric cell. The court held that, since the "optical system of the imported instrument is used only to segregate the desired wave lengths and concentrate them electrically upon [a] photoelectric cell," the imported article was properly classifiable as a scientific instrument and not an optical instrument. *Id.; see also Henry Wild Surveying Instrument Supply Co. of America v. United States,* 32 Cust.Ct. 91, 93, C.D. 1586 (1954).

█ In this case, the glass disk allows infrared radiation to strike the photoelectric cell, and prevents dust from accumulating inside the detector. To the extent that the disk prohibits visible light from deceiving the detector, and allows infrared radiation to pass, it is similar to the instrument in *Hensel, Brockman & Lorbacher, supra,* which was "used only to segregate the wavelengths and concentrate them electrically upon the photoelectric cell." Indeed, the exhibits show that the glass disk not only blocks out extraneous visible light, but also prevents the accumulation of dust in the detector. Moreover, the plaintiff's marketing literature indicates that the detector, because of its sensitivity to light, must be located only "in dark environments, such as exhaust tubes, covered silos, etc." Thus, since the detector must be located in a dark environment, the glass disk prevents accidental triggering of the device by extraneous light.

In its reply brief, the government submits that since the glass disk prevents dust

from accumulating in the detector, "logic dictates that its role is other than subsidiary." It strains logic and reason, however, to consider the disk's protection of the cell from dust accumulation as an optical function. On the facts presented, it is the determination of the court that the glass disks perform a subsidiary function. In addition, it is not contested that the sole purpose of the fibre-optic element in the fibre-optic detector is to protect the device from excessive heat. The probes merely transmit the radiation and any visible light to the photoelectric cell. Accordingly, the Court holds that neither type of spark detector comports with the statutory definition of optical instruments contained in headnote 3 to Schedule 7, Part 2, TSUS.

█ In all cases, it is fundamental that the court must interpret statutes in a manner that will give effect to the legislative purpose. Pursuant to the Customs Courts Act of 1980, the legislature has mandated that the United States Court of International Trade reach the correct classification in every case. Customs Courts Act of 1980 § 301, 28 U.S.C. § 2643(b) (1982); *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed.Cir.1984). Specifically, Congress has provided that, if a Customs classification is shown to be wrong, "the court may order a retrial or rehearing for all purposes, or may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision." 28 U.S.C. § 2643(b). The statute, however, "leaves to the court the discretion whether it should remand for further proceedings, or should reach the correct decision on its own." *Jarvis Clark, supra,* 733 F.2d at 878. In this case, remand is appropriate because plaintiff has established the incorrectness of the classification independently of its proposed alternatives.

█ The parties agree that the superior heading to items 712.05 to 712.51 covers the imported articles. However, summary judgment cannot be granted because material facts must be resolved to determine which of plaintiff's proposed alternatives is

**1262**

correct. In its brief, the government states that, if the imported spark detectors are not "optical instruments" or "instruments and apparatus for measuring or detecting" radiation, it would concede that the imported articles are "other" electrical measuring, analyzing, or automatically controlling instruments and apparatus, under item 712.49, TSUS. This concession, however, does not dissipate the existence of unresolved material facts.

It is clear that the " 'uniform and consistent interpretation and application' of the customs laws is central to customs policy." *Jarvis Clark, supra,* 733 F.2d at 876 (quoting H.Rep. No. 1235, 96th Cong., 2d Sess. 29, *reprinted in* 1980 U.S. Code Cong. & Ad. News 3729, 3741); *cf. Texas & Pacific R.R. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 439–40, 27 S.Ct. 350, 354–55, 51 L.Ed. 553 (1907) (judicial function is aided by initial agency determinations); *New Hampshire Motor Transport Ass'n v. Flynn,* 751 F.2d 43, 51 (1st Cir.1984). In this case the Court deems the power of remand to be the appropriate judicial remedy to effectuate the legislative will. *See Jarvis Clark, supra,* 737 F.2d at 876–77. Accordingly, this action is remanded to the Customs Service so that it may reclassify the imported merchandise in accordance with the appropriate statutory provision of the Tariff Schedules of the United States.

It is the determination of the Court that the imported spark detectors are not optical instruments for Customs Duty purposes, and that plaintiff has not established the correct classification. Accordingly, the Court holds that plaintiff's motion for summary judgment is granted in part and denied in part. The action is remanded to the Customs Service to determine the correct classification of the imported merchandise.