**SCHOTT OPTICAL GLASS, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 79–18.**

United States Court of Customs and Patent Appeals.

Dec. 20, 1979.

Rehearing Denied Feb. 21, 1980.

Richard C. King, Fitch, King & Caffentzis, New York City, attorney of record for appellant.

Alice Daniel, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Commercial Litigation Branch, Joseph I. Liebman, Atty. in Charge, Madeline B. Kuflik, Dept. of Justice, Civil Div., New York City, attorney of record for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and WATSON,* Judges.

MILLER, Judge.

This is an appeal from the judgment of the United States Customs Court in *Schott Optical Glass, Inc. v. United States*, 82 Cust.Ct. ——, 468 F.Supp 1318, C.D. 4783 (1979), which affirmed the denial by the Customs Service of Schott's protest to classification of its imported merchandise as "optical glass." We affirm.

## BACKGROUND

The imported merchandise consists of pieces of glass which are six and one-half inches square and colored in shades of red, green, blue, yellow, and gray. It was classified under Tariff Schedules of the United States ("TSUS") Item 540.67 [1] as "optical glass." Schott claimed classification as colored or special flat glass under Item 542.92. [2]

---

* The Honorable James L. Watson of the United States Customs Court, sitting by designation.

1. The pertinent provisions are as follows:

Tariff Schedules of the United States ("TSUS"):
Schedule 5.—NONMETALLIC MINERALS AND PRODUCTS
Part 3—Glass and Glass Products
  A. Glass in the Mass; Glass in Balls, Tubes, Rods, and Certain Other Forms; Foam Glass; Optical Glass; and Glass Fibers and Products Thereof

    Optical glass in any form, including blanks for spectacle lenses and for other optical elements; non-optical-glass blanks for corrective spectacle lenses; synthetic optical crystals in the form of ingots, segments of ingots, sheets, or blanks for optical elements; all the foregoing not optically worked; polarizing material, in plates or sheets, not cut to shape or mounted for use as polarizing optical elements:
        \* .   \*   \*

540.67    Other optical glass and synthetic optical crystals; polarizing material ........ 40% ad val.

2. The relevant provisions state:

  Schedule 5.—NONMETALLIC MINERALS AND PRODUCTS
  Part 3—Glass and Glass Products
    B. Flat Glass and Products Thereof
    Colored or special glass:
        \*   \*   \*

    Weighing over 28 oz. per sq. ft.:
542.92    Not over 2⅔ sq. ft. in area .............. 0.7¢ per lb.
                 + 2.5% ad val.

From its examination of the legislative history of TSUS 540.67 and pertinent case law the Customs Court concluded that glass which is: (a) very high quality, (b) used for optical instruments, and (c) capable of performing an optical function meets the definition of "optical glass" for tariff purposes, citing *Semon Bache & Co. v. United States*, 25 CCPA 239, T.D. 49339 (1937), *G.A.F. Corp., George S. Bush & Co. v. United States*, 67 Cust.Ct. 167, C.D. 4269 (1971), and *Ednal Co. v. United States*, 6 Cust.Ct. 552, Abs. 45423 (1941). The Customs Court declared that, based on the presumption of correctness that attaches to the classifying officer's decision, the foregoing indicia were presumed to be applicable to the involved merchandise; further, that the evidence supported the presumption. It noted that appellant was not in disagreement with these indicia, but, rather, had argued that an additional factor must be present, namely: the glass must have a refractive index and dispersion which are known and controlled to very close tolerances (a degree of four to six decimal places). On this issue, the Customs Court held that appellant failed to sustain its burden of proof by a preponderance of the credible evidence.

## OPINION

■ It is well settled in customs law that, when not otherwise defined in the TSUS or indicated by legislative history, the correct meaning of a term in a tariff provision is the common meaning understood in trade and commerce. *United States v. Rembrandt Electronics, Inc.*, 542 F.2d 1154, 64 CCPA 1 (1976), *Barnebey-Cheney Co. v. United States*, 487 F.2d 553, 61 CCPA 10 (1973), and *Trans-Atlantic Co. v. United States*, 471 F.2d 1397, 60 CCPA 100 (1973). It is also well settled that what constitutes the common meaning of a tariff term is not a question of fact but a question of law. In ascertaining the common meaning of a tariff term, the court may consult dictionaries, scientific authorities, and other reliable sources of information. *Trans-Atlantic Co. v. United States, supra; Nomura (America) Corp. v. United States*, 299 F.Supp. 535, 62 Cust.Ct. 524 (1969), *aff'd*

453 F.2d 1319, 58 CCPA 82 (1971). Congress is presumed to attach the common meaning to a term in a tariff provision, and the legislative history may be dispositive of an issue over common meaning. *Certified Blood Donor Services, Inc. v. United States*, 62 CCPA 66, 70, C.A.D. 1147 (1975).

■ TSUS General Rule of Interpretation 10(c) provides that:

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

(i) a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby;

(ii) comparisons are to be made only between provisions of coordinate or equal status, i. e., between the primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading . . . .

Applying this rule, it is clear that the meaning of "other optical glass" in 540.67 cannot be broader than "[o]ptical glass in any form" in its superior heading. It is also clear that the phrase "in any form" refers to the physical shape of the glass rather than to a material or quality of construction. *United States v. Central Scientific Co.*, 21 CCPA 214, T.D. 46749 (1933).

In considering the common meaning of "optical glass," we note that the *Tariff Classification Study*, Schedule 5, Part 3, 128 (1960), states that 540.67 "covers: (1) prisms and optical elements other than lenses, of glass, not optically worked, now dutiable . . . as scientific articles of glass; (2) optical glass other than in the form of lenses or prisms; (3) synthetic optical crystals other than in the form of ingots; and (4) polarizing material of any substance in sheets or plates." Regarding the latter it stated:

The existing tariff has no specific provision for polarizing material in sheet or plate form. . . . The sheets or

plates are cut to shape to make polarizing elements for microscopes and other optical instruments, for sunglasses, and for spectacles for viewing three-dimensional movies, and for other uses. . . . It is possible that they would be classifiable in glass provisions or by similitude to glass articles. They are therefore being assimilated in the schedule at this point, at the rate applicable to optical glass.

The description of "optical glass" in the *Summaries of Trade and Tariff Information*, Schedule 5, Vol. 4, 33 (1968), "covers *not-optically-worked*[3] articles such as optical glass in any form . . ." (emphasis added and footnote omitted). The *Summaries* also state: "optical glass is clear, high-quality glass that meets precision specifications as to its chemical composition, homogeneity, and freedom from physical defects." It is silent on refraction and dispersion properties.

The *Encyclopedia Brittanica,* Vol. 10 (1955), 419B, cited by the Customs Court, states:

> Optical glass differs from other types of glass in two essential characteristics. The first of these is its freedom from imperfections, of which the most common are unmelted particles, commonly called stones; bubbles; and chemical inhomogeneity, which produces regions or streaks of differing refractive index called striae. The elimination of striae is the most difficult problem in the manufacture of optical glass. The glass must also be physically homogeneous and free from mechanical strain, which is effected by an annealing treatment under conditions determined by the composition of the glass.

> The second fundamental characteristic of optical glass is that it can be obtained in a wide range of optical properties. For the manufacture of corrected lens systems, glasses must be available having not only a wide range of refractive index ($n_D$) but also of dispersion; and for many

special cases there is required knowledge not only of the mean dispersion ($n_F n_C$) but also of the partial dispersion ($n_D$-$n_C$, $n_F$-$n_D$, and $n_G$-$n_C$). These properties, and a quantity commonly given in optical glass catalogs is the V value [the combined formula for the V value is printed here]. Glasses are available having refractive index from 1.48 (fluor crowns) to 1.8 (extra dense flints) or even higher.

The testimony of appellant's witness, Dr. Norbert J. Kreidl (Professor of Ceramic Engineering at the University of Missouri and author of more than 100 papers in the field of glass science) explains what is meant by "a wide range of optical properties"—the phrase used in the *Encyclopedia Brittanica* statement. According to him, optical property "means the way light behaves when it passes through a material," and optical properties include absorption, refraction, transmission, reflection, dispersion, polarization, fluorescence, emission, electromagnetic effects, electro-optical effects, and magnetic optical effects; in short, any effect visible in the material when light strikes it.

■ In view of the foregoing, we are persuaded that the common meaning of "optical glass" embraces the concept of "high quality" with respect to each of the various properties described above, absorption, refraction, polarization, etc. A criterion for determining "high quality" with respect to one property may apply exclusively to that property (*e.g.*, refractive index applies only to the refractive property) or may also apply in determining "high quality" with respect to other properties (*e.g.* homogeneity applies to both the properties of absorption and refraction). When a glass is selected for a particular property, the proper inquiry is whether the glass is of "high quality" with respect to that property, and the quality with respect to other properties is immaterial.

In the case of glass in which the refraction property is critical, at least two criteria must be met. As described by Dr. Kreidl:

**3.** The *Summaries* define "not-optically-worked" to mean the glass has not been subjected to any grinding or polishing incident to

surface shaping for producing optical properties.

[O]ne is a very careful knowledge of the chemical composition, that means both the deliberate addition of the necessary chemicals and the guaranty in the processing that this intended composition is actually obtained. The second is the refractive index to the degree specified in a good optical glass is strongly affected by the way it is cooled down or annealed. The lack of knowledge or lack of patience in the time allowed for it could lead to serious deviations of the [refractive] index and even in the fourth [decimal] place.

In the case of glass in which the absorption property is critical, Dr. Kreidl stated that the degree of uniformity of color in the glass ("homogeneity") must be "very great," although he added that "you do not require that this homogeneity is to the numbers stated in an optical glass." Nevertheless, the unrebutted testimony of the Government's witnesses[4] clearly establishes that the involved Schott glass is of very high or of the highest quality available in glass chosen for its absorption property.

The Customs Court found that the Government had submitted "competent, reliable, and credible affirmative evidence" to support the presumption that the involved merchandise is within the common meaning of the provision for optical glass.

Appellant argues that "optical glass" must have a refractive index and dispersion controlled to very close tolerances (four to six decimal places for refractive index) and that such a controlled refractive index results from a more careful selection and control of materials and from an annealing process of much greater length and sophistication than for other glass. However, this argument applies to glass in which the refraction property is critical; whereas the absorption property is critical in the glass with which this case is concerned.

Accordingly, we hold that the involved Shott glass is "optical glass" for purposes of TSUS Item 540.67.

The judgment of the Customs Court is *affirmed.*

---

4. Dr. Radu Mavrodineanu of the special analytical instrumentation section at the National Bureau of Standards, author of some seventy papers in applied optics; Richard N. Mostrom, holder of a Master of Science degree in Optical Engineering from the Institute of Optics, University of Rochester, and employed by Honeywell, Inc. in the area of optical systems and optical instrument design; and Robert C. Saxton, holder of a Bachelor of Science degree in Chemical Engineering from Tri-State College, and employed for twenty-eight years at the Product Engineering Division of Corning Glass Works, the last nine years in the optical products department working entirely with color filter glass.