**SCHOTT OPTICAL GLASS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 81–1–00030.**

United States Court of International Trade.

Feb. 2, 1984.

Fitch, King & Caffentzis, New York City (Richard C. King and James Caffentzis, New York City, on the briefs), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C.; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, New York City (Madeline B. Kuflik, New York City, on the brief), for defendant.

*Opinion and Order*

MALETZ, Senior Judge:

At issue is whether importations of seven types of filter glass were properly classified by the government as other optical glass under item 540.67 of the Tariff Schedules of the United States (TSUS).[1]

---

1. Item 540.67 is contained in Schedule 5, Part 3, Subpart A, TSUS (1980) and reads:

> Optical glass in any form, . . synthetic optical crystals in the form of ingots, segments of ingots, sheets, or blanks for optical elements; all the foregoing not optically worked; polarizing material, in plates or sheets, not cut to shape or mounted for use as polarizing optical elements:
>
> \*　\*　\*　\*　\*　\*　\*
>
> 540.67　Other optical glass and synthetic optical crystals; polarizing material .......................... 23.1% ad val.

Plaintiff claims that the importations are not optical glass; rather, it contends that six of the seven types in question are properly classifiable under item 542.92 as "colored or special glass" and the remaining type properly classifiable under item 542.42 as ordinary glass.[2]

For the reasons that follow, the court concludes that the importations were correctly classified by the government under item 540.67 as other optical glass.

## I.

### Description of the Imported Merchandise

Each of the seven types of filter glass is separately identified by invoice number, i.e., KG 4, WG 345, UG 1, UG 5, UG 11, RG 9, and RG 830. The KG 4 (slightly greenish in color) functions to absorb the near infrared light while allowing transmittance of visible light. It is used in cold light sources and in film projectors where it protects the transparency from being destroyed by heat. It is also used in sighting and aiming devices where it filters out infrared energy to maintain constant visibility of the ranges. All of these uses are in optical instruments.

The WG 345 (colorless) functions to absorb specific wavelengths in the ultraviolet and to transmit visible light. It is used in solar filter simulators which are optical instruments.

The UG 1, UG 5, and UG 11 all absorb visible light and part of the near infrared light and are distinguished only by darkness and lightness of color. They are used as substrates on interference filters and in spectrophotometers both of which are optical instruments.

The RG 9 absorbs visible white and ultraviolet light and transmits infrared light. It is used in spectrometers and spectrophotometers which are optical instruments.

The RG 830 is similar to the RG 9 and its use is the same; it differs in that it absorbs more visible light.

With the exception of the KG 4, the various glass types are used in astronomical instrumentation at the Kitt Peak National Observatory which is the United States' national center for ground-based optical astronomy.

## II.

### Schott I and Stare Decisis

By way of background, it was determined in *Schott Optical Glass, Inc. v. United States*, 82 Cust.Ct. 11, 468 F.Supp. 1318, *aff'd*, 67 CCPA 32, 612 F.2d 1283 (1979) (*Schott I*) that the common meaning of the term "optical glass" as used in item 540.67 encompasses "glass which is: (a) very high quality, (b) used for optical instruments, and (c) capable of performing an optical function..." 67 CCPA at 33, 612 F.2d at 1285. Based on that determination, color filter glass in shades of red, green, blue, yellow and gray was held properly classifiable as optical glass under this provision. Plaintiff insists, however, that the *Schott I* determination of the common meaning of "optical glass" was clearly erroneous and thus not *stare decisis* here.

It is established that *stare decisis* is bottomed on the sound public policy that there must be an end to litigation and that, therefore, questions formerly determined

---

**2.** The specific tariff provisions claimed by plaintiff are contained in Schedule 5, Part 3, Subpart B, TSUS (1980) which provides:

> Glass (whether or not containing wire netting), in rectangles, not ground, not polished and not otherwise processed, weighing over 4 oz. per sq. ft.:
>
> Cast or rolled glass:
>
> *   *   *   *   *   *   *
>
> Other, including blown or drawn glass, but excluding pressed or molded glass:

Ordinary glass:

|  | * * * * * * * | |
|---|---|---|
| 542.42 | Weighing over 28 oz. per sq. ft.: | |
|  | Not over 2⅔ sq. ft. in area | 0.5¢ per lb. |
|  | * * * * * * * | |
|  | Colored or special glass: | |
| 542.92 | Weighing over 28 oz. per sq. ft.: | |
|  | Not over 2⅔ sq. ft. in area | 0.6¢ per lb. + 2.4% ad val. |

should not be readjudicated except on a clear and convincing showing of error in the former holding. *United States v. Dodge & Olcott, Inc.*, 47 CCPA 100, 103 (1960); *United Merchants, Inc. v. United States*, 60 CCPA 11, 14, 468 F.2d 208, 210 (1972). *See also e.g., United States v. Mercantil Distribuidora, et al.*, 45 CCPA 20, 23–24 (1957); *John C. Rogers & Co., Inc. v. United States*, 63 CCPA 10, 11, 524 F.2d 1220, 1221 (1975). Accordingly, the judicial determination of the common meaning of a term used in a statute becomes a matter of law which will be adhered to until a change in the statute necessitates a change in meaning or unless it is shown that the prior decision was clearly erroneous. *United States v. Felsenthal & Co., et al.*, 16 CCPA 15, T.D. 42713 (1928). *See also Dodge & Olcott, Inc.*, 47 CCPA at 103.[3]

■ Given this background plaintiff asserts that the *Schott I* determination of the common meaning of "optical glass" is clearly erroneous in that its common meaning should be restricted (1) to glass of very high quality with respect to its properties of refraction and dispersion and (2) only to colorless glass chiefly used for lenses and prisms. But these same arguments were presented to the Court of Customs and Patent Appeals by this same plaintiff in *Schott I* and were rejected.[4] Thus, the court made clear that "high quality" was *not* limited to the optical properties of refraction and dispersion but included other optical properties such as absorption, transmission, reflection, polarization, fluorescence, emission, etc. Specifically, the court pointed out that "[w]hen a glass is selected for a particular property, the proper inquiry is whether the glass is of 'high quali-

ty' with respect to that property, and the quality with respect to other properties is immaterial." *Schott I*, 67 CCPA at 36, 612 F.2d at 1286.

Additionally, plaintiff's claim that the common meaning of "optical glass" is restricted to colorless glass chiefly used for lenses and prisms was likewise rejected in *Schott I*. For one thing, the importations there involved, though consisting of colored glass in shades of red, green, blue, yellow and gray, were nonetheless held to be "optical glass." And with regard to the contention that "optical glass" must be chiefly used for lenses and prisms, the *Schott I* court stated that "[i]n considering the common meaning of 'optical glass,' we note that the *Tariff Classification Study*, Schedule 5, Part 3, 128 (1960), states that 540.67 'covers: ... (2) optical glass *other than* in the form of lenses or prisms ...' [emphasis supplied]." 67 CCPA at 34–5, 612 F.2d at 1285.

In sum, it is concluded that on the basis of *stare decisis*, the common meaning of "optical glass" as determined in *Schott I* is controlling.

### III.

### *Whether The Importations Are "Optical Glass"*

■ As we have seen the importations here, by virtue of their classification, are presumed to be (a) of very high quality, (b) used for optical instruments, and (c) capable of performing an optical function. In order to be successful in its claim, plaintiff has the burden of showing that the imported glass does not meet these criteria.[5]

---

**3.** Res judicata and collateral estoppel are not applicable in customs classification cases. Thus, a judgment in a customs classification case does not estop a subsequent action between the same parties involving the same merchandise and issues. *United States v. Stone & Downer Co.*, 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927); *J.E. Bernard & Co., Inc. v. United States*, 66 Cust.Ct. 545, 549–50, 324 F.Supp. 496, 500–1 (1971).

**4.** These arguments were also the subject of plaintiff's offer of proof at trial. R. 113–114.

**5.** Item 540.67, under which the importations were classified, covers "optical glass," "synthetic optical crystals," and "polarizing materials." Plaintiff, relying upon *United States v. Miracle Exclusives, Inc.*, 69 CCPA ——, ——, 668 F.2d 498, 499–500 (1981), insists that the government has lost its statutory presumption of correctness under 28 U.S.C. § 2639(a)(1) because the Customs Service's classification encompasses three categories, no one of which is implicit of the other. The argument has no merit. For there can be no doubt from the protest and the pleading that the government made clear, and the plaintiff

However, based on the present record, it must be concluded that plaintiff has failed to meet this burden.

### (a) *Very High Quality*

The record leaves no doubt that the imported merchandise is of very high quality. At the trial of the present case Dr. Karl Heinz Mader, a vice president of plaintiff, in charge of all corporate technical services, testified that the merchandise was manufactured with the same quality control features as the glass involved in *Schott I* (R. 170). In *Schott I* it was determined that glass is of very high quality if it is homogeneous and free from defects such as seeds, bubbles and striae. And as previously indicated, the concept of "high quality" refers to the specific property for which the glass is being used. Thus, in *Schott I*, the glass in question was of the highest quality of glass with respect to its absorption properties. Considering that the filter glass here involved is likewise used for its absorption properties, Dr. Mader's testimony that the quality of the glass involved here is the same as that involved in *Schott I*, underscores that the imported glass now before the court is of "very high quality" for the purpose of the "optical glass" definition.[6]

### (b) *Used for Optical Instruments*

At the trial plaintiff's counsel conceded that the merchandise in question was used for optical instruments (R. 178). In fact, after this concession, the defendant released one of its witnesses who was present at the trial to testify on that very point (R. 177–178). Despite this, plaintiff now points out that although the imported merchandise is used for optical instruments, the test by virtue of General Interpretative Rule 10(e)(1) is one of *chief use*.[7] Applying this yardstick, plaintiff now argues that *defendant* has not "... met its burden of proving to what class or kind of articles the imported articles belong, nor the use of that class or kind of article."

There is no merit to the entire argument. In the first place, even assuming the test is chief use, it was plaintiff's burden to prove such use, not the defendant's. Second, plaintiff's attorney having conceded that the importations were used for optical instruments, that admission is binding and the question is no longer in issue. *Glick v. White Motor Company*, 458 F.2d 1287, 1291 (3d Cir.1972); *Kelly v. Fulkerson*, 275 F.Supp. 134, 138 (M.D.Pa.1967), *aff'd*, 394 F.2d 463 (3d Cir.1968).

### (c) *Capable of Performing An Optical Function*

The third requirement for glass to be "optical glass" is that is be "capable of performing an optical function." As to this, plaintiff maintains that glass whose function lies outside the visible range of the electromagnetic spectrum is not capable of performing an optical function and, therefore, cannot be optical glass.

In our earlier description of the merchandise we listed the properties of the imported glass. The UG and RG types absorb nearly all visible frequencies of the electromagnetic spectrum so that a white material

---

fully understood, that the imported glass was classified by the Customs Service as "optical glass" and not as "synthetic optical crystals" or "polarizing materials." Thus here, unlike the situation in *Miracle Exclusives,* the government does not rely upon a Customs Service classification which embraces more than one category.

6. Indeed, Dr. Mader testified that the imported merchandise was of "very high quality based on standards for filter glasses" (R. 180); in fact, he stressed that "it is the highest quality filter glass available" (R. 146).

7. General Interpretative Rule 10(e)(i), TSUS, provides:

> (e) in the absence of special language or context which otherwise requires—
> (i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;
> \* \* \* \* \* \*

will appear nearly black to the human eye. Simply put, the UG and RG types affect the visible spectrum in that they absorb it. The WG type transmits the visible but absorbs all of a specific portion of the ultraviolet frequency while the KG type transmits the visible but absorbs the infrared frequency.

Both the WG and KG types appear clear or colorless and transmit nearly all the visible frequencies so that a white sheet of paper viewed through them appear essentially white. Again, the visible spectrum is affected.

In this setting, plaintiff maintains that to be optical glass, the article must be capable of performing an optical function within the visible portion of the spectrum. Because the optical function performed by the importations are outside this visible portion, it follows, according to plaintiff, that the importations are not optical glass.

The difficulty with this argument is that in *Schott I*, the court did not limit the finding of an optical function to the visible range of the spectrum. On the contrary, the court made clear that "any effect visible in a material where light strikes it" is an optical effect and therefore includes absorption and transmission of light as optical properties even though absorption and transmission do not necessarily operate in the visible portion of the spectrum. 67 CCPA at 36, 612 F.2d at 1286. It is true that in *G.A.F. Corp. v. United States*, 67 Cust.Ct. 167, C.D. 4269 (1971), this court concluded that the common use of "... the term 'optical', refers to the phenomena of light and vision, and an optical system of an instrument is one that aids vision or creates for inspection a picture or image of some object." *Id.* at 172. However, in view of *Schott I*, the *G.A.F.* determination is no longer controlling.

Lastly, plaintiff argues that the capable-of-performing-an-optical-function test is not a valid one and therefore invalidates the entire three-pronged test for optical glass set out in *Schott I*. On this aspect, plaintiff theorizes that unlike chief use, suitability for use, fitness for use, common usage,

and dedication to use, capability of use is not accepted by tariff law as controlling classification. The reason, according to plaintiff, is that all glass performs optical functions when light strikes it since all light must either be reflected, absorbed or transmitted when it strikes an object. Since reflection, absorption and transmissions are optical properties, plaintiff notes that *any* glass is "capable" of performing one or more of these optical functions. Given this consideration, plaintiff insists that the *Schott I* test is invalid because it presents a situation whereby material is classified on the basis of a function of which it is theoretically capable, without regard to the predominant use or function for which it is intended and designed and for which it is actually used.

But in *Schott I*, the court, as previously indicated, made clear that "[w]hen a glass is selected for a particular property, the proper inquiry is whether the glass is of 'high quality' with respect to that property and the quality with respect to the other properties is immaterial." CCPA at 36, 612 F.2d at 1286. This demonstrates that the capable-of-use test is *limited* to the capability of the glass in question for the particular optical property under consideration. Thus, the capability test is entirely meaningful with regard to the particular property for which the glass in question is produced.

## IV.

### Conclusion

For the foregoing reasons, the court sustains the government's classification and the action is dismissed. Defendant's conditional counterclaim based on statutory packing requirements for plaintiff's claimed classifications as colored, special or ordinary glass is dismissed as moot. Judgment will be entered accordingly.