NEC ELECTRONICS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 93–04–00201

(Dated March 28, 1997)

*Horton, Whiteley & Cooper (Robert Scott Whiteley, Craig A. Mitchell),* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Bruce N. Stratvert);* Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service *(Chi S. Choy),* of Counsel, for defendant.

### OPINION

GOLDBERG, *Judge:* This matter is before the Court following trial *de novo.* This case involves the proper tariff classification of laser diodes and laser diode modules. The United States Customs Service ("Customs") initially classified the merchandise under various tariff classifications upon entry into the United States in 1991. However, in response

to NEC Electronics, Incorporated's ("NEC") complaint filed with this Court, Customs stated that it intends to classify and reliquidate all of the merchandise as "light-emitting diodes (LED's)" under subheading 8541.40.20 of the Harmonized Tariff Schedule of the United States ("HTSUS") (1991), dutiable at the rate of 2 percent *ad valorem*. NEC challenges Customs' intended tariff classification. It argues that the merchandise is properly classified as "other diodes" under subheading 8541.40.60, HTSUS, and, therefore, should enter the United States duty free.

The proper classification of laser diodes and laser diode modules turns on the scope of the tariff term "light-emitting diodes (LED's)" as intended by Congress. To ascertain congressional intent, the Court must choose between two different canons of construction used to interpret the HTSUS: common commercial usage and the Explanatory Notes.

NEC contends that Congress intended the tariff classification "light-emitting diodes (LED's)" to identify a product commonly known in the marketplace as an "LED," and not the laser diode product at issue in this case. In contrast, Customs argues that Congress intended "light-emitting diodes (LED's)" to have a broader meaning, as demonstrated by the Explanatory Notes, which includes the subject merchandise within its scope. The Court rules in favor of Customs. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## STANDARD OF REVIEW

Customs' final liquidation classification of the merchandise enjoys a presumption of correctness which the plaintiff must overcome in order to prevail on the merits. 28 U.S.C. § 2639(a)(1) (1988). The presumption pertains not only to Customs' final classification, but also to every subsidiary fact necessary to support its determination. *United States v. New York Merchandise Co., Inc.*, 58 CCPA 53, 58, 435 F.2d 1315, 1318 (1970); *Schott Optical Glass, Inc. v. United States*, 82 Cust. Ct. 11, 15, 468 F. Supp. 1318, 1320, *aff'd*, 67 CCPA 32, 612 F.2d 1283 (1979).

To determine whether the plaintiff has overcome the presumption, the Court considers whether Customs' classification is correct, both independently and in comparison with the importer's proposed alternative. *Jarvis Clark Co. v. United States*, 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984).

## DISCUSSION

The Court will proceed as follows. First, it describes the technology relevant to the products at issue in this case as background. Second, the Court discusses whether the common commercial usage or the Explanatory Notes control the classification in this case. At this point, the Court considers the arguments of both NEC and Customs pertaining to the appropriate classification of the merchandise. Finding that the Explanatory Notes control, the Court then reviews the evidence presented at trial and finds that the subject merchandise is properly classified under subheading 8541.40.20, HTSUS, as "light-emitting diodes (LED's)."

## I. Background

Two types of products are relevant to this case: light-emitting diodes, commonly known as "LEDs" in the marketplace, and laser diodes. According to Customs' witnesses Dr. Kurt J. Linden,[1] and Dr. James S. Harris,[2] and NEC's witness Dr. H. Craig Casey, Jr.,[3] LEDs and laser diodes are based on the same basic technology. The two products differ in complexity.

In an LED, an electrical current is passed through a p-n junction to produce photons which provide visible light. In order to form a p-n junction, it is necessary to place a compound with an excess of electrons side-by-side with a compound that has a deficiency of electrons to form a single crystal.[4] A p-n junction spontaneously emits photons when an electrical current is passed through the junction, causing electrons from the n side of the junction to recombine with positively charged particles, known as "holes," from the p side of the junction. The photons emitted from this process produce the infrared and visible light of the LED.

LEDs are typically used as small lamps to indicate whether a device, such as a computer, is on or off. According to Dr. Casey, the average cost to retailers of LEDs is approximately ten cents per unit. More advanced LEDs may cost as much as fifteen dollars.

In contrast, although a laser diode contains the same p-n junction as an LED, it requires additional components in order to stimulate the emission of photons, to strengthen the intensity of the photon emission, and to guide the photons into a more focused or coherent emission. In general, a laser requires a feedback mechanism comprised of a set of mirrors set in a cavity that redirects photons emitted from the p-n junction back into the junction. A laser also contains a lens that focuses the photons.

Laser diodes are intended for a variety of commercial applications, including fiber optic transmission systems, optical measurement equipment, optical data communications, and bar code readers and pointers. According to Dr. Casey, they range in cost from five dollars, for simple laser diodes of the type used in CD players, to thousands of dollars, for more powerful lasers used in such applications as fiber optic communications systems.

## II. Whether Common Commercial Usage or the Explanatory Notes Control the Classification of the Subject Merchandise

In order to determine which of the two tariff classifications, "light-emitting diodes (LED's)" or "other diodes," more accurately describes the subject merchandise, the Court must determine whether the com-

---

[1] Manager of Laser Product Development at Spire Corporation.

[2] Professor of Electrical Engineering at Stanford University.

[3] Chairman of the Department of Electrical Engineering at Duke University.

[4] The p-n junction may be made of various base substances, such as silicon. Other substances are added to the base substance in order to add or draw off electrons from the mixture. For instance, adding arsenic, which contains five electrons, to silicon, which contains four electrons, creates a mixture that has an excess of electrons. Adding boron, which contains three electrons, produces a silicon-boron compound that has fewer electrons than the original silicon.

mon commercial usage or the Explanatory Notes control the meaning of the tariff term in the present action.

The general rule is that the Court, in ascertaining the plain meaning of a particular statutory term, presumes that Congress frames tariff acts using the language of commerce. *Nylos Trading Co. v. United States*, 37 CCPA 71, 73 (1949). The commercial meaning of a tariff term coincides with its common meaning, in the absence of evidence to the contrary. *United States v. C.J. Tower & Sons*, 48 CCPA 87, 89 (1961).

Accordingly, NEC presented evidence at trial that the commercial and scientific communities understand the term "LED," which appears in the tariff term "light-emitting diodes (LED's)," to refer to a different product than the subject merchandise. Therefore, according to NEC, Customs improperly classified the subject merchandise as "light-emitting diodes (LED's)" under 8541.40.20, HTSUS.

NEC's evidence comprised testimony from Mr. Udayan Parikh, Product Marketing Manager for NEC, who testified that the term LED is understood by NEC and its customers to mean the simple p-n junction device used as an indicator lamp, rather than the more complex merchandise at issue in this case.

NEC demonstrated that the scientific community also does not identify the subject merchandise as an LED, but rather as a laser diode. Dr. Casey testified that the scientific community distinguishes the two types of products based upon whether the stream of photons that they produce is (1) generated spontaneously or by stimulation, and (2) coherent or noncoherent. According to Dr. Casey, the subject merchandise differs from the product commonly known as an LED because the LED produces photons spontaneously and in a noncoherent stream. In contrast, the subject merchandise produces a more uniform or "coherent" stream of photons by a stimulated emission process. According to Dr. Casey, the subject merchandise, therefore, is not known as an LED in the scientific community.

NEC further supported Dr. Casey's testimony by citing definitions from lexicographic and scientific authorities that this Court may rely upon in order to arrive at its decision. *Brookside Veneers, Ltd. v. United States*, 6 Fed. Cir. (T) 121, 125, 847 F.2d 786, 789, *cert. denied*, 488 U.S. 943 (1988). *See, e.g., McGraw-Hill Dictionary of Scientific and Technical Terms* 113 (5th ed. 1994) (defining light-emitting device as a semiconductor diode that converts electric energy efficiently into *spontaneous* and *non-coherent* electromagnetic radiation at visible and near-infrared wavelengths by electroluminescence at a forward-biased p-n junction); *McGraw-Hill Dictionary of Scientific and Technical Terms* 1790 (5th ed. 1994) (defining a laser as a semiconductor optoelectronic device that emits *coherent* radiant energy through *stimulated* emission resulting from the recombination of electrons and holes).

The Court views the evidence presented by NEC to be credible.

However, in the present case, Customs has presented persuasive evidence that Congress intended the term "light-emitting diodes (LED's)"

to have a meaning broader in scope than its commercial usage. Therefore, the Court cannot assume that the legal definition of the statutory term "light-emitting diodes (LED's)" coincides with its common commercial meaning. *C.J. Tower & Sons*, 48 CCPA at 89.

Customs' classification is based on Explanatory Note 85.41(C). Explanatory Notes, while not controlling, may be used to clarify the HTSUS. *Mita Copystar America v. United States*, ____ Fed. Cir. (T) ____, 21 F.3d 1079, 1082 (1994).

Explanatory Note 85.41(C) sets forth and describes two types of light-emitting diodes: (1) light-emitting diodes, and (2) laser diodes. Explanatory Note 85.41(C) reads as follows:

### (C) LIGHT EMITTING DIODES

Light emitting diodes, or electroluminescent diodes, (based, *inter alia*, on gallium arsenide or gallium phosphide) are devices which convert electric energy into visible, infra-red or ultra-violet rays. They are used, e.g., for displaying or transmitting data in control systems.

Laser diodes emit a coherent light beam and are used, e.g., in detecting nuclear particles, in altimetering or in telemetering equipment, in communication systems using fibre optics.

The Court agrees with Customs that the Explanatory Note unambiguously refers to the laser diode and laser diode module merchandise at issue in this case. According to the Explanatory Note, "laser diodes" emit a coherent light beam. This description, therefore, contains at least one of the two critical elements of a laser diode as defined by NEC witness Dr. Casey, namely, a coherent light beam. The Explanatory Note also identifies one of the leading uses of this technology, fiber optic communication systems. Lastly, the Explanatory Note identifies the laser diode product by name.

It is also clear, based on a plain reading of Explanatory Note 85.41(C), that both laser diodes and the product typically known as LEDs are included within the scope of the tariff classification "light-emitting diodes (LED's)." The Explanatory Note lists and defines both products, "laser diodes" and "light-emitting diodes," under a single general subheading entitled "light-emitting diodes (LED's)." The juxtaposition of the definitions demonstrates that the statutory term "light-emitting diodes (LED's)" was intended to cover both products.

Moreover, the failure of the Explanatory Note to explicitly exclude laser diodes from the general subheading "light-emitting diodes (LED's)" further supports the conclusion that the tariff classification covers both LEDs and laser diodes. In cases in which the Explanatory Notes clearly intend that a closely related item is not to be classified under a particular tariff term, the Explanatory Notes state the exclusion. *See, e.g.*, Explanatory Note 85.41(D), (excluding unmounted piezo-electric crystals from the category mounted piezo-electric crystals).

Customs further supports its position by pointing out that the p-n junction technology underlying both LEDs and laser diodes is closely re-

lated. According to Customs, this suggests that Congress intended both products to be classified together as "light-emitting diodes (LED's)" in accordance with Explanatory Note 85.41(C). Moreover, it shows that NEC's proposed subheading "other diodes" is an incorrect classification. The classification "other diodes" covers products based on technology unrelated to the p-n technology used in both laser diodes and LEDs. 8541.40.60, HTSUS. Therefore, according to Customs, the HTSUS term "other diodes" does not accurately describe the subject merchandise.

General Rule of Interpretation 3(a), HTSUS, instructs the Court to select the classification that is most descriptive of the merchandise rather than the more general description.

Based upon the testimony at trial and upon the Explanatory Notes, the Court finds that the subheading "light-emitting diodes (LED's)" is more descriptive of the laser diode merchandise than is NEC's proposed subheading "other diodes." In particular, the Court bases it decision on the following evidence: (1) Explanatory Note 85.41(C), HTSUS, unambiguously refers to laser diodes and places them under the tariff term "light-emitting diodes (LED's);" (2) Customs' classification of the subject merchandise as "light-emitting diodes (LED's)" appears to cover all products that utilize p-n junction technology; and (3) NEC's proposed classification "other diodes" appears to cover technology unrelated to the kind of technology at issue in the present case.

The Court makes a similar finding with respect to laser diode modules. According to General Rule of Interpretation 3(b), goods comprised of different components must be classified as though they were wholly made of the material or component which gives them their essential character. Because the Court finds that the laser diode component gives the laser diode module its essential character, the Court's finding with respect to laser diodes controls the classification of laser diode modules.

### CONCLUSION

The Court holds that the laser diodes and laser diode modules at issue are properly classified under subheading 8541.40.20, HTSUS for "light-emitting diodes (LED's)." Judgment will be entered accordingly.